UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 07-cv-00883-WYD

TINA M. SCHEEL OOR,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

_____

**ORDER**
_____

I.    <u>INTRODUCTION</u>

    THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433 and 1381-1383c ["the Act"]. Plaintiff applications, filed on March 16, 2005, alleged a disability onset date of January 2, 2005 due to fibromyalgia, irritable bowel syndrome, and memory problems. (Transcript ["Tr."] 47-71.) Plaintiff was 35 years old when she filed her claim for benefits.

    Plaintiff's claims were initially denied on September 8, 2005. (Tr. 28-31). Plaintiff then requested an administrative hearing (*id*. 32), which was held on September 12, 2006. (*Id*. 253-65.) On September 22, 2006, the Administrative Law Judge ["ALJ"] issued a Notice of Decision - Unfavorable. (*Id*. 16-25). The ALJ found that Plaintiff was not disabled because she retained the residual functional capacity ["RFC"] to perform a

significant range of medium work, and this RFC rendered her capable of performing her past relevant work as a dispatcher. (*Id.* 22-25.) This is discussed in more detail below.

The Appeals Council determined that there was no basis for changing the ALJ's decision. (Tr. 4-7.) Thus, the ALJ's September 22, 2006 decision became the final decision for purposes of judicial review, and the case is properly before the Court.

II.     THE ALJ'S DECISION

At step one of the sequential evaluation, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2005. (Tr. 21.) He further found that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability, January 2, 2005. (Tr. 21.)

At step two of the sequential evaluation, the ALJ found that the claimant had a severe impairment of fibromyalgia. (*Id.*) He further found that while Plaintiff reported additional impairments, including irritable bowel syndrome and arthritis in her hands and fingers, "there is no objective medical support for either of these impairments and, as such, the undersigned finds the claimant does not have any additional medically determinable impairment." (*Id.*)

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of an impairment in the Listings. (Tr. 22.) The ALJ stated that he considered "the musculoskeletal and immune system listings at 1.00 and 14.00 of the Listing of Impairments, but the claimant's impairments fail to satisfy the criteria of any of these Listings." (*Id.*)

The ALJ found that Plaintiff has the RFC:

> to perform a significant range of medium work. She is able to lift up to 50
> pounds occasionally and 25 pounds frequently. She can sit, stand, and/or
> walk 6-8 hours in an 8- hour workday, with a sit-stand option allowing for
> frequent positional changes every 15-30 minutes.

(*Id.*) He found as to Plaintiff's credibility that her "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (*Id.* 24.)

At step four of the sequential evaluation, the ALJ relied on a vocational expert's testimony to find that, given Plaintiff's RFC, she remained capable of performing her past relevant work as a dispatcher. (Tr. 24-25). Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act, and did not reach step five of the sequential evaluation. (*Id.* 25.)

III. ANALYSIS

A. Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Further, the ALJ's failure to apply correct legal standards, or show that it has done so, is grounds for reversal. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 1993). Although the court should carefully examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

B. <u>Whether the ALJ's Decision is Supported by Substantial Evidence</u>

My review of the record reveals errors that require the Commissioner's decision to be reversed and remanded for further factfinding.

  1. <u>Whether the ALJ Erred in Giving "No Weight" to the Opinions of Treating Physician Jack Rook, M.D. and in Assessing the Severity of Plaintiff's Fibromyalgia</u>

Dr. Rook, a pain specialist, completed a Medical Assessment Of Ability To Do Work-Related Activities (Physical) on August 18, 2006 that was highly supportive of Plaintiff's claim for benefits. (Tr. 234-36.) On the form, Dr. Rook diagnosed Plaintiff with fibromyalgia, chronic fatigue, thoracic outlet syndrome, lumbar facet aotheropathy(?) and chondromalacia of the right knee. (*Id.* 234.) It was Dr. Rook's opinion that Plaintiff would miss 4 or more days from work per month due to her medical condition, that her medical condition is of such severity that she would be so preoccupied with the condition that she would lose 1 hour or more of productivity out of the work day, and that her alleged onset of disability of at least December, 2003 is consistent with her medical records. (*Id.* 234-35.) Dr. Rook also found that Plaintiff could lift no more than 10 pounds, but that lifting should be avoided as much as possible, that standing/walking was limited to 30 minutes before she needed to sit or lie down, and sitting was limited to 15 to 30 minutes before she would need to stand or lie

down. (*Id.* 235.) At the hearing, the vocational expert testified that if Dr. Rook's findings were applicable, all competitive employment would be excluded. (*Id.* 262.)

The ALJ found Dr. Rook's opinion was entitled to no weight, despite the fact that he was a treating physician. He stated as the basis of this finding that:

> these limitations recommended by Dr. Rook are inconsistent with the minimal abnormalities identified in his treatment records, and appear to be grossly disproportionate to his objective observations. Furthermore, even the claimant admitted to a greater level of functioning, and admittedly is able to pick up her 40 pound 5-year old, although she cannot hold her for long. For these reasons, no weight is given to the opinion of Dr. Rook.

(Tr. 24.) The ALJ also stated as to Dr. Rook's treatment of Plaintiff that "despite the claimant's extensive complaints, and resultant assessment, the claimant's objective examination was fairly normal." (*Id.* 23.) He stated as to Plaintiff's RFC that he gave greater weight to the consultative opinion of Dr. Gilman (*id.*), although it appears that he actually gave Dr. Gilman's opinion controlling weight.[1]

I find that the reasons given by the ALJ in giving no weight to Dr. Rook's opinion are not supported by substantial evidence and/or are legally erroneous. I first note that the Commissioner must give controlling weight to the opinion of a treating physician if the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Hamlin*, 365 F.3d at 1215. "When an ALJ rejects a treating physician's opinion, he must articulate "'specific, legitimate reasons for his decision.'" *Id.* (quoting *Drapeau v.*

---

[1] The ALJ also noted that "the single decision-maker's opinion [by medical consultant Lee] is also consistent with the [RFC] set forth above." (Tr. 24, referring to Exhibit 3F, Tr. 214-221). However, he acknowledged that Lee is not a medically acceptable source, and it appears that he did not rely on this as a basis for his decision. Accordingly, I do not address that opinion in this Order.

*Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)). "The opinion of an examining physician. . . is generally entitled to less weight than that of a treating physician. . . ." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

Turning to my analysis, Plaintiff's primary impairment is fibromyalgia. When asked what objective medical data supported this diagnosis, Dr. Rook referred to "Multiple Tender points". (Tr. 234.) This is supported by the record. (*Id*. 185, 188, 210.) The Tenth Circuit has indicated that such tender points constitute objective evidence to support a diagnosis of fibromyalgia. *See Meraou v. Williams Co. Long Term Disability Plan*, No. 06-5051, 2007 WL 431515, at *8 (10th Cir. 2007); *Moore v. Barnhart*, No. 03-3253, 2004 WL 2634571, at *8 (10th Cir. 2004)[2]; *see also Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 916 (7th Cir. 2003); Social Security Administration Memorandum of May 11, 1998 (attached as Ex. 1 to Plaintiff's Opening Brief).

Further, the Tenth Circuit has made clear that it is improper to reject findings as to fibromyalgia based on the fact that they are not established by formal clinical signs or laboratory tests. *Moore*, 2004 WL 2634571, at *8-9 (citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). Specifically, *Moore* stated:

> The ALJ stated that Dr. McKinney's opinions on plaintiff's limitations appeared to be based "more on [plaintiff's] subjective complaints and the diagnosis of fibromyalgia than on any clinical signs or laboratory findings," . . . . In addition to being speculative inferences from medical reports that an ALJ may not make, *see McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th

---

[2] While citation of an unpublished opinion is disfavored, I have cited these and other unpublished opinions in this Order because I find that they have persuasive value with respect to a material issue that has not been addressed in a published opinion and/or would assist me in my ruling. *See* 10th Cir. R. 36.3(B).

> Cir.2002), these examples reflect the ALJ's fundamental misperception of the nature of fibromyalgia. *Id*. Indeed, it is the absence of symptoms ordinarily associated with joint and muscle pain that is one of the most striking aspects of this disease. . . . " *Id*. "Patients with FMS [fibromyalgia) syndrome] usually look healthy." *Id.* Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling, although there may be tenderness on palpation. In addition, muscle strength, sensory functions, and reflexes are normal despite the patient's complaints of acral numbness."

*Id*. at 991-92. Both the ALJ and the Commissioner (in its Response) appear to misunderstand the nature of fibromyalgia and improperly rely on the lack of objective evidence to support such a finding. This is error.

Further, there was actually evidence in the record which supported Dr. Rook's findings as to fibromyalgia and the other impairments he noted. For example, on the physical examination of Plaintiff in December 2005, he noted the following:

> tenderness of the lateral aspect of the knee. . . Tinel's sign was positive at bilateral transverse carpal ligaments and bilateral cubital tunnels.... Hyperabduction sign was positive bilaterally. On evaluation of her shoulders there was moderate tenderness of the subacromial spaces with a positive impingement sign bilaterally. Cervical range of motion was decreased in all planes. On palpation of neck and back musculature, the patient had increased muscle tone with severe tenderness of bilateral paracervical, trapezius, parathoracic, and paralumbar muscles. There was exquisite tenderness of both sacroilliac joints.

(Tr. 248-49.) Dr. Rook went on to state that Plaintiff "is extremely symptomatic suffering from a severe fibromyalgia syndrome." (*Id*. 249.) "She experiences pain in all extremities, her neck, back, and pelvis. Her sleep is poor. She has irritable bowel symptoms. She is chronically fatigued. Additionally, she has evidence of nerve irritation at multiple locations including the carpal tunnels, cubical tunnels, thoracic outlets, and the tarsal tunnels." (*Id*.) Dr. Rook also noted in December 2005 that in addition to the chronic pain complained of by Plaintiff, "she also experiences numbness in an ulnar

nerve distribution bilaterally. Her hands fall asleep with elevation of her arms or when she bends her elbows." (*Id.* 243.) Finally, Dr. Rook modified Plaintiff's medications numerous times to try to achieve better pain control and referred her to other sources for additional treatment options. Clearly, Dr. Rook felt that Plaintiff's impairments were substantial, and made findings consistent with that.

Dr. Rook's findings were supported by two other treating physicians. Plaintiff saw Dr. MacDonald for complaints of muscle stiffness, muscle fatigue and pain involving the bilateral hips, bilateral knees, bilateral shoulders, neck and low back. (Tr. 94, 187). Dr. MacDonald diagnosed general fatigue and fibromyalgia. His musculoskeletal examination showed "no tenderness to palpitation of the bony and soft issue structures" but "many trigger points are painful". (*Id.* 188). Plaintiff was again seen by Dr. MacDonald on March 7, 2005 for "chronic pain/spasms". Physical findings from an examination of the back revealed "multiple painful trigger points". (*Id.* 185.) She was given pain medication and continued on Flexeril for muscle spasms. (*Id.* 186.)

In May 26, 2006, another physician, Dr. Benecke of the Colorado Pain Institute, saw Plaintiff at the request of Dr. Rook. He noted that Plaintiff's pain had progressed to the point where "she is finding less benefit from chiropractic manipulation or from her medication. The feeling of Dr. Rook and Dr. Abercrombie is that this is facet joint mediated, and recommended rhizotomies for same." (Tr. 232.) Dr. Benecke found on examination that Plaintiff's "[e]xtension was markedly painful at 5 to 10 degrees and maybe even worse with rotation while palpating over the lumbrosacral facets." (*Id.*) He discussed with Plaintiff "radiofrequency denervation of the facet joints, preceded by lumbar facet joint injections" at six levels. (*Id.*) The plan was to perform a single

injection with low dose bupivacaine to assess efficacy of the procedure before proceeding with radiofrequency denervation. (*Id.)* Dr. Benecke further stated that there was no guarantee of sustained relief. (Id. 232-33.) Facet joint injections were carried out in June 2006. (*Id.* 231.) The injections gave Plaintiff low back pain relief lasting only for about three days, at which time Dr. Rook refilled pain and muscle relaxant medications and recommended a rhizotomy procedure. (*Id.* 238.)

Plaintiff's diagnosed symptoms, including the tenderness in trigger points, fatigue, symptoms of irritable bowel syndrome, severe pain requiring the use of various analgesic pain medications, and disturbed sleep, are also consistent with the discussion of fibromyalgia in the Social Security Administration Memorandum of May 11, 1998. (Ex. 1 to Plaintiff's Opening Brief). The ALJ did not consider this.

Even Dr. Gilman, the consultative examiner that the ALJ relied on, found that Plaintiff had 16 areas where she experienced pain and that "these are all classic trigger points." (*Id.* 210.) The ALJ improperly ignored the fact that there was other evidence in the record which supported the findings of Dr. Rook.

I find from my review of the evidence that the ALJ improperly made speculative inferences from the medical reports and inserted his own medical judgment over that of Dr. Rook as to the severity of Plaintiff's impairments based on the objective evidence. This was improper. *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (an ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her credibility judgments, speculation or lay opinion)* (emphasis in original); *see also Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir. 1987) ("While an ALJ is authorized to make a final decision concerning disability he

cannot interpose his own 'medical expertise' over that of a physician, especially when that physician is the regular treating doctor").

Further, the ALJ erred by not stating what weight he gave to any of the findings in Dr. Rook's medical records, other than his Medical Assessment Of Ability To Do Work-Related Activities (Physical) discussed above. I find that this also was error. *Robinson*, 366 F.3d at 1082 ("'an ALJ must give good reasons. . . for the weight assigned to a treating physician's opinion,' that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight'") (quotation omitted).

The Commissioner refers to the fact that Dr. Rook stated that Plaintiff's "Lumbar DJD" constitutes objective medical evidence in support of his findings. (Tr. 234.) The Commissioner argues that this is referring to degenerative disc disease and that x-rays of Plaintiff's lumbrosacral spine and pelvis were normal, as the ALJ pointed out. (Tr. 24.) Thus, the Commissioner argues that this supports the ALJ's findings. I interpret Lumbar DJD to mean degenerative joint disease, not degenerative disc disease. *See* http://en.allexperts.com/q/Rheumatology-including-Arthritis-986/degenerative-joint-disease.htm ("Degenerative Joint Disease (DJD) is another name for Osteoarthritis"). Contrary to the Commissioner's argument, there was objective evidence in the record that supported that finding. (Tr. 248-49—"On evaluation of her shoulders there was moderate tenderness of the subacromial spaces with a positive impingement sign bilaterally. Cervical range of motion was decreased in all planes. . . . There was exquisite tenderness of both sacroilliac joints"; Tr. 232—"The feeling of Dr. Rook and Dr. Abercrombie is that this is facet joint mediated". . . findings on examination were that

Plaintiff's "[e]xtension was markedly painful at 5 to 10 degrees and maybe even worse with rotation while palpating over the lumbrosacral facets").[3]

The ALJ also rejected Dr. Rook's medical assessment of Plaintiff's ability to do work-related activities on the basis that "even the claimant admitted to a greater level of functioning." (Tr. 23.) The ALJ did not, however, state where in the record Plaintiff admitted to a greater level of functioning. Her testimony certainly does not support this, as she testified to limitations fairly consistent with those assessed by Dr. Rook. (*Id.* 257—Plaintiff testified she cannot sit for more than 30 minute or stand for more than 30 minutes). Further, Dr. Gilman's report of Plaintiff's complaints also do not support this. (Tr. 22). Thus, this finding does not appear to be supported by substantial evidence. The ALJ also appeared to reject Dr. Rook's assessment on the basis that Plaintiff "admittedly is able to pick up her 40 pound 5-year old daughter, although she cannot hold her for long (Exhibit 5F)". (Tr. 23.) The ability to lift a child does not, however, translate to a finding that Plaintiff can perform work at the RFC level found by the ALJ on "'a regular and continuing basis,' . . ., that is, '8 hours a day, for 5 days a week, or an equivalent work schedule,' . . . ." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (quotations omitted).

Finally as to Dr. Rook, I agree with Plaintiff that even when an ALJ decides that a treating physician's opinions are not entitled to controlling weight, that does not allow

---

[3] *See* http://www.healthscout.com/ency/416/577/main.html#DiagnosisofDegenerativeJoint Disease (symptoms of degenerative joint disease may include joint stiffness, pain on motion of the affected joint, limitation of motion of the affected joint, mild joint swelling and tenderness to touch; diagnosis "is based on the medical history, physical examination, and x-ray findings. Lab tests do not reveal signs of inflammation, but may be performed to rule out other arthritic disorders").

him to reject their opinions outright. *Langley*, 373 F.3d at 1120. Instead, their opinions are "'still entitled to deference and [should be] weighed using all of the [relevant] factors.'" *Id.* (quotation omitted). The ALJ's decision does not reflect that he gave deference to Dr. Rook's findings and weighed them, or that he gave "any consideration of what lesser weight the opinion should be given or discuss[ed] the relevant factors set out in [42 U.S.C.] § 404.1527." *Id.*

The only evidence in the record that the ALJ relied on to reject Dr. Rook's opinions were the findings of consultative examiner Dr. Gilman. As noted above, Dr. Gilman's opinion, however, in part substantiated the findings of Dr. Rook, at least as to Plaintiff's pain. This was not properly considered by the ALJ. Further, the ALJ was required to examine the inconsistent evidence from Dr. Gilman to see if it outweigh Dr. Rook's opinion, "'not the other way around.'" *Valdez v. Barnhart*, No. 01-1531, 2003 WL 366751 at *2 (10th Cir. 2003) (quoting *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995)).

I also agree with Plaintiff that the ALJ improperly "cherry picked" the findings of Dr. Gilman. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. *See, e.g., Haga*, 482 F 3d at 1208; *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir 2004). While the ALJ cited to portions of Dr. Gilman's opinion that supported his decision as to Plaintiff's RFC, he improperly discounted the portion that did not. Specifically, Dr. Gilman noted that "any job the patient would have to deal would need to take into accounts the patient's medications, which she requires for pain control which would be necessary and without which her limitations would be more significant." (Tr.

-12-

213.)  The ALJ ignored this finding.  This is discussed in more detail below in connection with the discussion of Plaintiff's RFC.

Since the ALJ did not follow the correct legal standards in evaluating Dr. Rook's opinion and the opinions of the other medical professionals, I find that the ALJ's decision is not supported by substantial evidence.  The case must be remanded for a proper consideration and weighing of the evidence.

### 2. Whether the ALJ Failed to Properly Determine Plaintiff's RFC

Since I find that the ALJ did not properly weigh the medical evidence, including the findings of Dr. Rook, I find that the RFC also necessarily must be reassessed on remand after the evidence is properly weighed.  I also find other errors with the ALJ's RFC assessment.  Specifically, I agree with Plaintiff that the ALJ failed to properly consider the pain, fatigue and other non-exertional impairments that Plaintiff suffered in determining her RFC.

I first find that the ALJ failed to conduct a proper pain analysis and that the case must also be remanded on this basis.  The framework for the proper analysis of a claimant's pain is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987).  There is certainly objective medical evidence of a pain-producing impairment in this case, and I find there is a loose nexus between the proven impairment and the claimant's subjective allegations of pain.  *Id.* at 163.  If there is a loose nexus, all the evidence, both objective and subjective, must be considered to determine whether the claimant's pain is in fact disabling.  *Id.*  This evidence "includes the medical data previously presented, any other objective indications of the degree of pain, and subjective accounts of the severity of the claimant's pain."  *Id.*  Other factors include "a claimant's persistent attempts to find relief

for his pain and his willingness to try any treatment prescribed. . . regular contact with a doctor, . . . the possibility that psychological disorders combine with physical problems. . . . the claimant's daily activities, and the dosage, effectiveness, and side effects of medication." *Id.* at 165-66. *See also Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993).

While the ALJ stated that "a review of [Plaintiff's] medical records fails to support the degree of pain and functional limitations alleged" (Tr. 22), the ALJ did not discuss many of the relevant factors or even specifically state why he rejected the findings of pain. This is error. As to those factors, the medical evidence clearly substantiated Plaintiff's pain and no medical provider opined that Plaintiff exaggerated her symptoms.

While the ALJ found that Plaintiff was reported to be doing fairly well with medication management of her symptoms by March 2006, purportedly referring to a treatment note of Dr. Rook (Tr. 241), he conveniently ignores the fact that in April 2006 Dr. Rook noted that Plaintiff had "increasing low back and hip pain and the medications have been less effective". (*Id*. 242). The medical records also document continued pain and problems with the effectiveness of pain medication in May 2006. (*Id*. 238.) Further, in November 2006, Dr. Sung wrote to Dr. McDonald that Plaintiff's pain was bad enough to at least consider surgery. (*Id*. 251-52.) The ALJ also references the facet injections Plaintiff received, but these injections only provided relief for three days. (*Id*. 238.) Even consultant Dr. Gilman that the ALJ gave weight to appeared to credit Plaintiff's complaints of pain and her need to take medication to help with same. Yet again the ALJ appears to be improperly selectively applying the evidence.

Further, there was extensive evidence of the medications Plaintiff took to attempt to control the pain. Plaintiff testified at the hearing that she was currently on Vicodin, Flexural, Skelaxin, Murilax, and Oxycodone or OxyContin. (Tr. 264.) The prescription printouts for the period from January 1, 2005 through August 22, 2006 time period also include prescriptions for such medications as Baclofen, Tramadol, Cyclobenzaprine, Hydrocodone, Trazodone, Morphine, and Clonazepam. (*Id.* 177-84). These included prescription anti-inflammatory, antipain and/or muscle-relaxant medications, many or all of which carry warnings about the potential for serious side effects and/or risk of addiction. It is obvious from these medications that Plaintiff was trying to find relief from the pain she experienced.

The ALJ also failed to consider the effects of these medications on Plaintiff's ability to work. Plaintiff testified that the medications make her "a little foggy" and that "[i]t takes me longer to get things done." (Tr. 264.) The ALJ did not properly consider this. I find that error particularly egregious given the fact that Dr. Gilman, who the ALJ allegedly gave great weight to, noted that any job that Plaintiff would have needed to take into account her medications which were required for pain control. (*Id.* 213.)

The ALJ also improperly did not consider Plaintiff's persistent attempts to seek medical treatment for her pain and to follow that treatment. *See* SSR 96-7p, 1996 WL 374186 (1996). Indeed, after treating with Dr. MacDonald for approximately one year, without having obtained any significant improvement in her symptoms, she began treatment with Dr. Rook, a pain specialist. While treating with Dr. Rook, Plaintiff's medications were changed and dosages modified in a variety of ways, she was referred to other providers, she tried chiropractic manipulations, pool therapy, physical therapy,

underwent facet injections and was planning to try a rhizotomy procedure when financially able to do so.

The ALJ rejected Plaintiff's credibility overall on the basis that her "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 24.) He referred to Plaintiff's care for her four children and activities and found that Plaintiff "maintains a fairly active lifestyle" and "generally maintains a high level of functioning even in light of her reported pain." (*Id*. 22, 23.) The ALJ concluded that "[t]he claimant's lifestyle in general fits the pattern of a stay-at-home mother, caring for her children in lieu of re-entering the workforce, and suggests that lifestyle choice, as opposed to a functional limitations [sic] resulting rom a physical impairment, is the primary reason for the claimant's continued unemployment." (*Id*. 23.) I find error with the ALJ's findings in that regard, as I find they are speculation and/or not supported by substantial evidence.

First, I find the ALJ's conclusion that Plaintiff made a lifestyle choice to be a stay-at-home mom to be inappropriate, rampant speculation. There is no evidence in the record that supports this finding, and this conclusion goes well beyond a proper credibility determination. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) ("'[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings'") (quotations omitted).

Second, "the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993). While the ALJ relied on Plaintiff's activities, he failed to ask her

about her activities at the hearing or give her an opportunity to discuss the impact of her impairments on these activities.  This was error.  *See Robinson*, 366 F.3d at 1083-84 (ALJ's decision to reject a treating physician's opinion based upon his opinion that claimant failed to comply with prescribed treatment was procedurally and legally deficient in part because he did not give the claimant an opportunity to explain the specific reasons for her failure to take medications).

Further, the ALJ improperly ignored Dr. Gilman's findings wherein he noted that Plaintiff had significant limitations in connection with those activities.  Even though the ALJ states that he gave great weight to Dr. Gilman's opinion, he ignored his medical record which indicates that Plaintiff only periodically can cook and dress herself, that Plaintiff is unable to bend over to dust for any length of time or to sit on her knees to clean, that shopping, mopping, sweeping and washing causes her spasms, and that she no longer does her hobbies, including scrapbooking, because of pain.  (Tr. 209.)  The notes from Dr. Gilman are fairly consistent with what Plaintiff reported on the Function Report - Adult.  (*Id.* 117—I do as much house work as pain permits. . . I have to work around pain", "My kids help with as many chores as possible").  Further, while the ALJ referred to the fact that Plaintiff had four children, purportedly as a reason to find that she was able to take care of them, he ignored her testimony that her mother helped her out with the children or her statement that her oldest daughter helps out with the younger kids.  (*Id.* 259, 118.)

The ALJ also found that "[w]hile the claimant reports a history of more than 12 years of fibromyalgia related symptoms, she has been capable of working for extended periods of time, as recently as 1999, despite this condition." (Tr. 22.)  The fact that

Plaintiff may have reported to a physician that she suffered from fibromyalgia symptoms for 12 years does not, however, support a conclusion that the symptoms were of the severity now complained of. This could just as easily support a conclusion that Plaintiff tried to work in spite of her impairment for as long as she could, but that the pain and other symptoms had worsened over time, preventing her from working any longer. Again, this is improper speculation. Further, the ALJ ignored the fact that Plaintiff's strong work history actually may make her more credible as to her inability to work now. *See Tyson v. Apfel*, 107 F. Supp. 2d 1267, 1270 (D. Colo. 2007) ("Where a claimant has a good work history, she is entitled to substantial credibility when she then asserts that she is unable to work") (citing *Rivera v. Schweiker*, 717 F.2d 719, 725 (2nd Cir. 1983)).

Finally, as to pain, "[i]f the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry." *Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. 1994). "The [Commissioner] must show that 'jobs exist in the national economy that the claimant may perform *given the level of pain [she] suffers.*'" *Id.* (quoting *Thompson*, 987 F.2d at 1490-91). "A vocational expert is ordinarily required to determine what limitation. . . pain might impose on [Plaintiff's] ability to do. . . work." *Id.* The RFC given to the vocational expert did not contain any reference to pain or the impact pain may have on Plaintiff's ability to work.

I also note that the ALJ improperly disregarded and did not consider the findings of fatigue in the record. (*See, e.g.*, Tr. 249—noting that Plaintiff is "chronically fatigued"). Plaintiff testified that she is unable to do her prior work because she "can't lay down like I need to do." (*Id.* 257.) "Fatigue is a subjective symptom that the ALJ

must consider." *Lozano v. Astrue*, No. 06-15935, 2008 WL 833153, at *1 (9th Cir. 2008) (citing *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.1996)). In *Lozano*, the Ninth Circuit remanded the case to allow the ALJ to either incorporate fatigue into his RFC "or explicitly explain his reasons for declining to do so." *Id*.

The ALJ also erred by not assessing all of Plaintiff's impairments in combination, including those found not to be severe. *See Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) ("When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination") (citing 42 U.S.C. § 423(d)(2)(C)). As noted above, the record showed evidence of pain and fatigue, irritable bowel symptoms, and a sleep disorder.[4] In a case similar to this one where the plaintiff suffered from fibromyalgia as well as chronic fatigue the Tenth Circuit held that the ALJ committed reversible error when he failed to assess the combined effects they had on the plaintiff's ability to do work-related activities. *Langley v. Barnhart*, 373 F.3d 1116, 1124 (10th Cir. 2004).

In conclusion, I find that the ALJ did not properly weigh or consider all the relevant factors, and that this case must be remanded so that Plaintiff's RFC can be properly reassessed. In doing so, the ALJ must assess not only Plaintiff's ability to obtain employment, but "the ability to do sustained work-related physical and mental

---

[4] While the Commissioner argues that there is no objective evidence of irritable bowel syndrome in the record, and that validates the ALJ's credibility finding, I disagree. Dr. Rook found that Plaintiff had irritable bowel symptoms. (Tr. 249). Further, Plaintiff points out that she was prescribed Glycolax as a medication, and that this is a brand name for polyethylene glycol which is a laxative solution that increases the amount of water in the intestinal tract to stimulate bowel movements. It is used to treat occasional constipation, irregular bowel movements or related disorders. http://www.drugs.com/mtm/glycolax.html.

activities in a work setting on a regular and continuing basis". *See* SSR 96-8p(1), 1996 WL 374184, at *1 (1996). As the Tenth Circuit has held, "'[a] finding that a claimant is able to engage in substantial gainful activity requires . . . a determination that the claimant can *hold* whatever job he finds for a significant period of time.'" *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994) (emphasis in original) (quotation omitted).

IV.     CONCLUSION

Based upon the errors described above, I find that this case must be reversed and remanded.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further factfinding pursuant to 42 U.S.C. § 405(g).

Dated September 23, 2008

                                                    BY THE COURT:

                                                    s/ Wiley Y. Daniel
                                                    Wiley Y. Daniel
                                                    U. S. District Judge